**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

YI XING,

      Petitioner,

vs.                                               No. CIV 26-0306 JB/JMR

MARY DE ANDA-YBARRA, Field Office
Director the El Paso Field Office of U.S.
Immigration and Customs Enforcement,
Enforcement and Removal Operations;
KRISTI NOEM, Secretary, U.S. Department
of Homeland Security; PAMELA BONDI,
U.S. Attorney General; Executive Office for
Immigration Review; DORA CASTRO, in her
Official Capacity as Warden of Otero County
Processing Center,

      Respondents.

## <u>MEMORANDUM OPINION AND ORDER SUSTAINING THE OBJECTIONS TO THE MAGISTRATE JUDGE'S<br>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

      **THIS MATTER** comes before the Court on the Respondents' Objections to the Proposed Recommended Disposition, filed March 20, 2026 (Doc. 18)("Objections"). The Honorable Jennifer M. Rozzoni, United States Magistrate Judge for the United States District Court for the District of New Mexico, files the Magistrate Judge's Proposed Findings and Recommended Disposition on March 6, 2026 (Doc. 17)("PFRD"). The PFRD notifies the parties of their ability to file Objections within fourteen days and that the failure to file Objections waives appellate review. <u>See</u> PFRD at 12. On March 20, 2026, the Respondents -- Mary De Anda-Ybarra, El Paso

Field Office Director of ICE, Kristi Noem,[1] Secretary of Homeland Security, Pamela Bondi,[2] U.S. Attorney General, Dora Castro, Warden of Otero County Processing Center, collectively "the Respondents"[3] -- file their Objections to the PFRD.  See Objections at 1.  The primary issues that the Objections to the PFRD present are: (i) whether Xing is a member of the bond-eligible class in Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb 18, 2026)("Bautista"), such that his class membership entitles him to a bond hearing; (ii) whether the Respondents may detain Xing under 8 U.S.C. § 1225, because he is an alien present within the United States and the United States has not lawfully admitted him into the United States; and (iii) whether Xing's detention under § 1225 violates his due process rights.  The Court concludes that: (i) Bautista does not entitle Xing to a bond hearing, because the Ninth Circuit has temporarily stayed enforcement of the judgment in favor of the bond eligible class outside the Central District of California; (ii) the Respondents may detain Xing under § 1225, because he is seeking admission; (iii) Xing's detention under § 1225 does not violate his due process rights, because the length of his detention has not been so long that it crosses over into punishment in violation of due process. The Court therefore sustains the Respondents' Objections to Magistrate Judge Rozzoni's PFRD.

**FACTUAL BACKGROUND**

---

[1] As of March 31, 2026, Noem is no longer the Secretary of Homeland Security.  See Trump Ousts Noem as Homeland Security Secretary, https://www.nytimes.com/live/2026/03/05/us/trump-news (last visited April 9, 2026).

[2] As of April 2, 2026, Bondi is no longer the U.S. Attorney General.  See Pam Bondi Out As Attorney General, https://www.politico.com/news/2026/04/02/pam-bondi-attorney-general-justice-department-00855413 (last visited April 9, 2026).

[3] Castro, the Warden of the Otero County Processing Center, is not a federal government employee, and the attorneys working for the United States who file the Objections to the PFRD do not represent Castro.  Castro indicates, however, that Castro adopts all of the Respondents' positions and argument in these habeas cases.

No party objects to the PFRD's factual background.  Finding that the facts as stated, therefore, are not clearly erroneous, the Court adopts the PFRD's facts.  See Alexander v. Kirkpatrick, 435 F. Supp. 3d 1216, 1221-22 (D.N.M. 2020)(Browning, J.)("Because the parties have not objected to it, the Court does not review the PFRD de novo, but rather reviews [the PFRD] to determine if it is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.").

Xing is a citizen of the People's Republic of China.  See PFRD at 1.  On March 17, 2024, Xing enters the United States approximately 30.6 miles east of Tecate, California, at a place other than a port of entry.  See PFRD at 2.  On March 18, 2024, the Border Patrol apprehends Xing and charges him with being subject to removal under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i).  See PFRD at 2.  Xing is placed in removal proceedings under INA § 240.  See PFRD at 2.  After determining that Xing does not have any criminal history, and is not "a threat to national security, border security, or public safety," the Department of Homeland Security issues Xing a Notice to Appear and releases him by Order of Recognizance.  See PFRD at 2.  On May 17, 2024, Xing files an application for asylum and withholding of removal based on his "fear of persecution of China due to religious beliefs and anti-CCP [Chinese Community Party] activism." PFRD at 2.

Xing resides in Flushing, New York, since his arrival in the United States, where he is an active member in the Church of Jesus Christ of Latter-Day Saints.  See PFRD at 2.  Xing avers that he "has remained in total compliance with all DHS requirements, including attending every scheduled check-in with ICE Enforcement and Removal Operations ("ERO") in New York City." PFRD at 2.

On November 19, 2025, Xing is re-detained after he reports for a routine U.S. Immigration and Customs Enforcement ("ICE") check in.  See PFRD at 2.  No evidence indicates that Xing

violates the conditions of his parole, or that the United States takes any action to revoke his parole before or since he was taken into custody. See PFRD at 3. Respondents now detain Xing pursuant to § 1225(b)(2). See PFRD at 3. Xing is incarcerated in Otero County Processing Center in Chaparral, New Mexico. See PFRD at 3.

## LAW REGARDING OBJECTIONS TO PROPOSED FINDINGS AND RECOMMENDATIONS

District courts may refer dispositive motions to a Magistrate Judge for a recommended disposition. See Fed. R. Civ. P. 72(b)(1) ("A magistrate judge must promptly conduct the required proceedings when assigned, without the parties' consent, to hear a pretrial matter dispositive of a claim or defense. . . ."). Rule 72(b)(2) governs objections: "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). Finally, when resolving objections to a Magistrate Judge's proposal, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Similarly, 28 U.S.C. § 636 provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute." United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, and Contents, 73 F.3d

1057, 1059 (10th Cir.1996)("One Parcel")(quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).  As the United States Court of Appeals for the Tenth Circuit notes, "the filing of objections advances the interests that underlie the Magistrate's Act, including judicial efficiency."  One Parcel, 73 F.3d at 1059 (citing Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1165 (10th Cir.1986); United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981)).

The Tenth Circuit holds "that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  One Parcel, 73 F.3d at 1060.  "To further advance the policies behind the Magistrate's Act, [the Tenth Circuit], like numerous other circuits, have adopted 'a firm waiver rule' that 'provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions.'"  One Parcel, 73 F.3d at 1059.  In addition to requiring specificity in objections, the Tenth Circuit states that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996).  See United States v. Garfinkle, 261 F.3d 1030, 1031 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived.").  In an unpublished opinion, the Tenth Circuit states that "the district court correctly held that [a petitioner] had waived [an] argument by failing to raise it before the magistrate."  Pevehouse v. Scibana, 229 Fed. Appx. 795, 796 (10th Cir.2007).[4]

---

[4]Pevehouse v. Scibana is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect

In One Parcel, the Tenth Circuit, in accord with other Courts of Appeals, expands the waiver rule to cover objections that are timely but too general.  See One Parcel, 73 F.3d at 1060. The Supreme Court of the United States -- in the course of approving the United States Court of Appeals for the Sixth Circuit's use of the waiver rule -- notes:

> It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings. The House and Senate Reports accompanying the 1976 amendments do not expressly consider what sort of review the district court should perform when no party objects to the magistrate's report. *See* S.Rep. No. 94-625, pp. 9-10 (1976)(hereafter Senate Report); H.R.Rep. No. 94-1609, p. 11 (1976), U.S.Code Cong. & Admin. News 1976, p. 6162 (hereafter House Report).  There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate. Moreover, the Subcommittee that drafted and held hearings on the 1976 amendments had before it the guidelines of the Administrative Office of the United States Courts concerning the efficient use of magistrates. Those guidelines recommended to the district courts that "[w]here a magistrate makes a finding or *ruling* on a motion or an issue, his determination should become that of the district court, unless specific objection is filed within a reasonable time." *See* Jurisdiction of United States Magistrates, Hearings on S. 1283 before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary, 94th Cong., 1st Sess., 24 (1975)(emphasis added)(hereafter Senate Hearings). The Committee also heard Judge Metzner of the Southern District of New York, the chairman of a Judicial Conference Committee on the administration of the magistrate system, testify that he personally followed that practice. *See id.,* at 11 ("If any objections come in, . . . I review [the record] and decide it. If no objections come in, I merely sign the magistrate's order."). The Judicial Conference of the United States, which supported the *de novo* standard of review eventually incorporated in § 636(b)(1)(C), opined that in most instances no party would object to the magistrate's recommendation, and the litigation would terminate with the judge's adoption of the magistrate's report. *See* Senate Hearings, at 35, 37. Congress apparently assumed, therefore, that any party who was dissatisfied for any reason with the magistrate's report would file objections, and those objections would trigger district court review. There is no indication that

---

to a material issue in a case and would assist the court in its disposition, we allow citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citing In re Citation of Unpublished Opinions/Orders & Judgments, 151 F.R.D. 470 (10th Cir. 1993)).  The Court concludes that Pevehouse v. Scibana has persuasive value with respect to a material issue, and will assist the Court in its disposition of the matters now before it.

- 6 -

> Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed. It did not preclude treating the failure to object as a procedural default, waiving the right to further consideration of any sort. We thus find nothing in the statute or the legislative history that convinces us that Congress intended to forbid a rule such as the one adopted by the Sixth Circuit.

Thomas v. Arn, 474 U.S. at 150-52 (emphasis in original).

The Tenth Circuit also notes, "however, that '[t]he waiver rule as a procedural bar need not be applied when the interests of justice so dictate.'" One Parcel, 73 F.3d at 1060 (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir.1991)("We join those circuits that have declined to apply the waiver rule to a pro se litigant's failure to object when the magistrate's order does not apprise the pro se litigant of the consequences of a failure to object to findings and recommendations."). Cf. Thomas v. Arn, 474 U.S. at 154 (noting that, while "[a]ny party that desires plenary consideration by the Article III judge of any issue need only ask," a failure to object "does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard"). In One Parcel, the Tenth Circuit notes that the district judge decides sua sponte to conduct a de novo review despite the objections' lack of specificity, but the Tenth Circuit deems the issues waived on appeal, because waiver advances the interests underlying the waiver rule. See 73 F.3d at 1060-61 (citing cases from other Courts of Appeals where district courts elect to address merits despite potential application of waiver rule, but Courts of Appeals opt to enforce waiver rule).

Where a party files timely and specific objections to the Magistrate Judge's PFRD, on "dispositive motions, the statute calls for a *de novo* determination, not a *de novo* hearing." United States v. Raddatz, 447 U.S. 667, 674 (1980). "[I]n providing for a '*de novo* determination' rather than *de novo* hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate judge's proposed findings and

recommendations." United States v. Raddatz, 447 U.S. at 676 (quoting 28 U.S.C. § 636(b) and citing Mathews v. Weber, 423 U.S. 261, 275 (1976)).  The Tenth Circuit requires a "district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation" when conducting a de novo review of a party's timely, specific objections to the magistrate judge's report.  In re Griego, 64 F.3d 580, 583-84 (10th Cir. 1995).  "When objections are made to the magistrate's factual findings based on conflicting testimony or evidence . . . the district court must, at a minimum, listen to a tape recording or read a transcript of the evidentiary hearing."  Gee v. Estes, 829 F.2d 1005, 1008-09 (10th Cir. 1987).

A district court must "clearly indicate that it is conducting a de novo determination" when a party objects to the Magistrate Judge's report "based upon conflicting evidence or testimony." Gee v. Estes, 829 F.2d at 1009.  On the other hand, a district court fails to meet the requirements of 28 U.S.C. § 636(b)(1) when it indicates that it gave "considerable  deference to the magistrate's order."  Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1988).  A district court need not, however, "make any specific findings; the district court must merely conduct a *de novo* review of the record."  Garcia v. City of Albuquerque, 232 F.3d 760, 766 (10th Cir.2000).  "[T]he district court is presumed to know that de novo review is required.  Consequently, a brief order expressly stating the court conducted de novo review is sufficient."  Northington v. Marin, 102 F.3d 1564, 1570 (10th Cir. 1996)(citing In re Griego, 64 F.3d at 583-84).  "[E]xpress references to de novo review in its order must be taken to mean it properly considered the pertinent portions of the record, absent some clear indication otherwise."  Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d 722, 724 (10th Cir. 1993).  The Tenth Circuit holds that a district court properly conducts a de novo review of a party's evidentiary objections when the district court's "terse" order contains one sentence for each of the party's "substantive claims" and does "not mention his procedural challenges to the jurisdiction of the magistrate to hear the motion."  Garcia v. City of

Albuquerque, 232 F.3d at 766.  The Tenth Circuit explains that brief district court orders that "merely repeat[ ] the language of § 636(b)(1) to indicate its compliance" are sufficient to demonstrate that the district court conducts a de novo review:

> It is common practice among district judges in this circuit to make such a statement and adopt the magistrate judges' recommended dispositions when they find that magistrate judges have dealt with the issues fully and accurately and that they could add little of value to that analysis. We cannot interpret the district court's statement as establishing that it failed to perform the required de novo review.

In re Griego, 64 F.3d at 584.

Notably, because "Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations," United States v. Raddatz, 447 U.S. at 676 (emphasis omitted), a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate," 28 U.S.C. § 636(b)(1).  See Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42, 8 F.3d at 724-25 (holding that the district court's adoption of the Magistrate Judge's "particular reasonable-hour estimates" is consistent with the de novo determination that 28 U.S.C. § 636(b)(1) and United States v. Raddatz require).

Where no party objects to the Magistrate Judge's PFRD, the Court reviews, as a matter of course and in the interests of justice, the Magistrate Judge's recommendations.  In Pablo v. Soc. Sec. Admin., No. CIV 11-0132 JB/ACT, 2013 WL 1010401 (D.N.M. February 27, 2013)(Browning, J.), the plaintiff fails to respond to the Magistrate Judge's PFRD, and thus waives his right to appeal the recommendations, but the Court nevertheless conducts a review.  See 2013 WL 1010401, at *1, *4.  The Court generally does not, however, "review the PFRD de novo, because the parties have not objected thereto, but rather review[s] the recommendations to determine whether they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *4.  The Court, thus, does not

determine independently what it would do if the issues had come before the Court first, when there is no objection, but rather adopts the PFRD where "'the Court cannot say that the Magistrate Judge's recommendation . . . is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.'" Pablo v. Soc. Sec. Admin., 2013 WL 1010401, at *3 (quoting Workheiser v. City of Clovis, No. CIV 12–0485 JB/GBW, 2012 WL 6846401, at *3 (D.N.M. December 28, 2012)(Browning, J.)).  See Alexandre v. Astrue, No. CIV 11-0384 JB/SMV, 2013 WL 1010439, at *4 (D.N.M. February 27, 2013)(Browning, J.)("The Court rather reviewed the findings and recommendations . . . to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion.  The Court determines that they are not, and will therefore adopt the PFRD."); Trujillo v. Soc. Sec. Admin., No. CIV 12-1125 JB/KBM, 2013 WL 1009050, at *5 (D.N.M. February 28, 2013)(Browning, J.)(adopting the proposed findings and conclusions, and noting: "The Court did not review the ARD de novo, because Trujillo has not objected to it, but rather reviewed the . . . findings and recommendation to determine if they are clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion, which they are not.").  This review, which is deferential to the Magistrate Judge's work when there is no objection, nonetheless provides some review in the interest of justice, and seems more consistent with the waiver rule's intent than no review at all or a full-fledged review.  Accordingly, the Court considers this standard of review appropriate.  See Thomas v. Arn, 474 U.S. at 151 ("There is nothing in those Reports, however, that demonstrates an intent to require the district court to give any more consideration to the magistrate's report than the court considers appropriate.").  The Court is reluctant to have no review at all if its name is at the bottom of the order adopting the Magistrate Judge's PFRD.

## ANALYSIS

The Court sustains the Respondents' Objections to Magistrate Judge Rozzoni's PFRD. First, Bautista does not entitle Xing to a bond hearing, because the Ninth Circuit has temporarily

stayed enforcement of the judgment in favor of the bond eligible class outside the Central District of California.  Second, the Respondents may detain Xing under § 1225, because he is seeking admission.  Third, Xing's detention under § 1225 does not violate his due process rights, because the length of his detention has not been so long that it crosses over into punishment in violation of due process.

## I.  BAUTISTA DOES NOT ENTITLE XING TO A BOND HEARING.

Magistrate Judge Rozzoni first concludes that Xing is entitled to a bond hearing, because Respondents fail to respond to Xing's argument that he is a member of the bond-eligible class in Bautista.  See PFRD at 10.  In the Objections, the Respondents generally object to Magistrate Judge Rozzoni's conclusion that the Respondents cannot detain Xing under § 1225.  See Objections at 2.  The Court agrees with the Respondents that Xing is subject to § 1225's mandatory detention.

Because the Respondents object to Magistrate Judge Rozzoni's conclusion that Bautista entitles Xing to a bond hearing, the Court conducts a de novo review.  See Alexander v. Kirkpatrick, 435 F. Supp.3d 1216, 1218 (D.N.M. Jan. 23, 2020)("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").  Xing argues that he is entitled to a bond hearing as a member of the bond eligible class certified in Bautista.  See Notice of Supplemental Authority at 1, filed February 25, 2026 (Doc. 12).  The district court in Bautista most recently purported to vacate Matter of Yajure Hurado, the BIA decision upon which Immigration Judges are relying to hold that noncitizens like Xing are detained under § 1225(b)(2)(A) and not entitled to bond hearings.  See Bautista, 2026 WL 468284, at *10.  The United States has appealed that decision. The Ninth Circuit has stayed temporarily enforcement of the judgment in favor of the bond eligible class outside the Central District of California and the decision vacating Matter of Yajure Hurtado.

See Bautista, No. 26-1044, Dkt.51, Order (9th Cir. March 6, 2026).  Xing does not seek habeas relief in the Central District of California.  See Petition at 1.  The Court therefore sustains this portion of the Respondents' Objections and concludes that Bautista does not entitle Xing to a bond hearing.

**II.    THE RESPONDENTS MAY DETAIN XING UNDER § 1225, BECAUSE HE IS SEEKING ADMISSION.**

In the PFRD, Magistrate Judge Rozzoni concludes that the Respondents may not detain Xing under § 1225, because the United States waives any defense to the issues Xing presents in the Amended Verified Emergency Petition for Writ of Habeas Corpus on Behalf of Petitioner Pursuant to 28 U.S.C. § 2241, filed February 6, 2026 (Doc. 2)("Petition").  See PFRD at 11.  In Magistrate Juge Rozzoni's opinion, the Respondents waive any defense to the Petition when they file a response that merely incorporates by reference the legal briefs filed in Singh v. Noem, No. CIV 25-1110 JB/KK, 2026 WL 146005 (D.N.M. Jan. 20, 2026)(Browning, J.), because merely "'referencing a pleading from a different case is impermissible, even if the two cases involve the same parties . . . .'"  PFRD at 6 (quoting Macias v. New Mexico Dep't of Labor, 300 F.R.D. 529, 562 (D.N.M. March 31, 2014)(Browning, J.).  The Respondents' Response is three-pages and has two attachments, one which is three pages and the second is four pages.  See generally Response.  The Respondents on page 1 state that "[i]t is Respondents' position that Petitioner is subject to mandatory detention under § 1225(b), because he was present in the United States without being admitted or paroled."  Response at 1.  The Respondents cite to the United States Court of Appeals' decision in Buenrostro-Mendez v. Bondi, 2026 WL 323330 (5th Cir. 2026), once in the carryover sentence from page 1-2, and once in footnote 2 on page 2.  See Response at 1-2.  The Respondents argue:

> This Court recently reached a similar conclusion in Singh v. Noem, No. CIV 25-1110 JB/KK, 2026 WL 146005 (D.N.M. Jan. 20, 2026) on legally operative facts

relatively similar in nature to those currently before the Court.  See Ex. 1 (Border Patrol agent's report regarding March 2024 encounter), Ex. 2 (deportation officer's report regarding November 2025 encounter).  In Singh, this Court concluded that the petitioner, who had entered the United States without inspection almost two years before his current detention and had filed an asylum application, was "seeking admission" under Section 1225(b)(2)(A) and therefore properly detained under that statute.

Response at 2.

The Court concludes that this argument puts the Court on sufficient notice of the Respondents' argument.  The primary issue is whether the Court is going to follow its prior decision in Singh v. Noem to allow the Respondents to detain under § 1225 aliens who file for asylum.  The Respondents put the Court on sufficient notice that the Court needs to decide this issue.[5]  In the Objections, the Respondents argue that they can detain Xing under § 1225, because the facts of this case align with the facts in Singh v. Noem.  See Objections at 2-3.  The Court agrees with the Respondents that they can detain Xing under § 1225, because Xing is seeking

_____

[5] It is true that the Respondents drop footnote 2 stating: "Specifically, Respondents incorporate by reference all arguments raised in its response brief in Singh . . . ."  Response at 2.  Magistrate Judge Rozzoni relies on this sentence in the footnote to find the Respondents waive the right to respond to the Petitioner.  See PFRD at 5-7.  As the Court concludes in the text above, the Respondents' arguments in the text of the Response is sufficient to tell the Court what the issue is.  Thus, even if the Court disregards entirely the brief in Singh, there is enough in the Response' text to give the Court a solid idea of the issue it must decide.  Moreover, while the Response is the equivalent of an answer to the Petition, habeas matters and responses are much like briefing, and here the Respondents' cite to the Court's opinion in Singh carries a lot of water.

Finally, in the context of court pleadings, rule 10(c) of the Federal Rules of Civil Procedure outlines the process of "adoption by reference," which provides that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  Fed. R. Civ. P. 10(c).  Wright and Miller indicates that there is a limitation: "the primary and secondary documents must be filed in the case -- referencing a pleading from a difference case is impermissible, even if the two cases involve the same parties . . . ."  Macias v. New Mexico Dep't of Labor, 300 F.R.D. 529, 562 (D.N.M. March 31, 2014)(Browning, J.)(citing Wright et al., supra, §1326, at 429).  The Court has adopted, in dicta, this procedural rule.  See Macias v. New Mexico Dep't of Labor, 300 F.R.D. at 562.  It should be recognized, however, that this procedural rule is not in rule 10(c).  See Fed. R. Civ. P. 10(c).  The Court should use the procedural rule cautiously and conservatively.  The Court will not use that rule to avoid deciding the Singh issue when the Respondents have invoked Singh independent of incorporating its briefing in Singh.

admission as the Court defines that phrase in Singh v. Noem.

Because the Respondents object to Magistrate Rozzoni's conclusion that the Respondents cannot detain Xing under § 1225, the Court conducts a de novo review. See Alexander v. Kirkpatrick, 435 F. Supp.3d 1216, 1218 (D.N.M. Jan. 23, 2020)("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The Court previously holds that the United States may use § 1225 to detain aliens in the interior of the United States who satisfy the seeking admission requirement:

> The Court instead believes that seeking admission is something active that an alien must engage; an alien must request admission into the United States. This seeking can occur at the border, by an arriving alien to request admission at a lawful point of entry; this seeking can also occur in the interior of the United States, however, when an alien who has not been admitted, an applicant for admission, makes some attempt to gain lawful admission such as filing for an asylum or visa.

Singh v. Noem, 2026 WL 146005, at *35. The Court therefore applies the test this Court articulates in Singh v. Noem.

For § 1225 purposes, there is no question that Xing is an alien present in the United States for over two years and that the United States apprehends him in the interior of the United States. See PFRD at 2. See 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission."). Under this fact pattern, the United States may detain Xing under § 1225 if he is found to be seeking admission. See 8 U.S.C. § 1225(2)(A) ("[I]f the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title."). Like the alien in Singh v. Noem, who is seeking admission, because he applies for asylum, Xing applies for asylum on May 17, 2024, based on his "fear of persecution of China due to religious beliefs and

- 14 -

anti-CCP [Chinese Community Party] activism." PFRD at 2. See Singh v. Noem, 2026 WL 146005, at *35 (holding that an alien seeks admission for purposes of § 1225 by applying for asylum). Xing is therefore seeking admission and § 1225's mandatory detention is applicable. The Court therefore sustains this portion of the Respondents' Objections and concludes that Xing is subject to § 1225's mandatory detention.

**III.     XING'S DETENTION UNDER § 1225 DOES NOT VIOLATE HIS DUE PROCESS RIGHTS.**

In the PFRD, Magistrate Judge Rozzoni concludes that Xing's detention under § 1225 violates his due process rights, because the Respondents fail to respond to Xing's argument that the Respondents' sudden re-detention violate his due process rights. See PFRD at 10. In the Objections, the Respondents argue that the petitioner's circumstances in Singh v. Noem, are substantially similar to Xing's circumstances and, therefore, Xing's detention under § 1225 does not violate his due process rights. See Objections at 2. The Court agrees with the Respondents that Xing's detention under § 1225 does not violate Xing's due process rights.

Because the Respondents object to Magistrate Rozzoni's conclusion that Xing's § 1225 detention violates his due process rights, the Court conducts a de novo review. See Alexander v. Kirkpatrick, 435 F. Supp.3d 1216, 1218 (D.N.M. Jan. 23, 2020)("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). As the Court explains in Singh v. Noem, the only procedural rights that an alien -- subject to the entry fiction -- has is what § 1225 affords and therefore continued detention without a bond hearing does not violate an alien's procedural due process rights. See Singh v. Noem, 2026 WL 146005, at *39. The Court therefore sustains the Respondents' Objections insofar as they argue that they do not violate Xing's procedural due process rights.

Based on the Tenth Circuit's conclusion in <u>Rodriguez-Fernandez</u>, 654 F.2d 1382, 1387 (10th Cir. 1981), however, the Court concludes that Xing has substantive due process protections that extend beyond § 1225's protections.  The United States may violate an alien subject to the entry fiction's substantive due process rights if immigration detention becomes punitive.  <u>See</u> <u>Rodriguez-Fernandez</u>, 654 F.2d at 1387 ("[A]n excluded alien in physical custody within the United States may not be 'punished' without being accorded the substantive . . . due process guarantees of the Fifth Amendment.").  Nevertheless, "the mere fact that a person is detained does not inexorably lead to the conclusion that the government has imposed punishment." <u>United States</u> <u>v. Salerno</u>, 481 U.S. 739, 746 (1987).  A restriction on liberty is punitive rather than regulatory if (i) the government intends to impose punishment; or (ii) the restriction is not rationally related to a legitimate nonpunitive governmental purpose or is excessive in relation to that purpose.  <u>See</u> <u>United States v. Salerno</u>, 481 U.S. at 747; <u>Kingsley v Henderson</u>, 576 U.S. 389, 398 (2015).

The Court determines that Xing cannot demonstrate, at this time, that his detention is so long that it has crossed over into punishment and a violation of his due process rights.  First, Xing provides no evidence that his detention is the result of an intent to punish on the United States' part.  Further, the Court determines that "facilitating deportation" is a rational, nonpunitive purpose for detention.  <u>Demore v. Kim</u>, 538 U.S. 510, 532-33 (2003)(Kennedy, J., concurring).  Finally, the Court determines that Xing's detention to date -- detained since November 19, 2025 -- is not so long as to qualify as "excessive in relation" to the purpose of facilitating deportation.  <u>See</u> PFRD at 2.  When there is "an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation . . . but to incarcerate for other reasons."  <u>Demore v. Kim</u>, 538 U.S. at 532-33 (Kennedy, J., concurring).  The Court does not draw a bright-line rule of what constitutes an "unreasonably delay," but concludes that the approximate six-month detention up to this point

- 16 -

does not constitute a violate of Xing's substantive due process rights, especially given the volume of deportations that the United States is processing right now.

Moreover, Xing's detention is similar to the alien's detention in Singh v. Noem. In Singh v. Noem, the United States re-detains the alien -- also an asylum seeker -- at an interior United States Border Patrol checkpoint absent any material change in circumstances that renders him a danger to the community or a flight risk. See 2026 WL 146005, at *3. The Court concludes that the United States does not violate the alien's substantive due process rights, because roughly four-months of detention does not constitute a violation of the alien's substantive due process rights. See 2026 WL 146005, at *39. Similarly, the Respondents re-detain Xing after he reports for a routine ICE check-in. See PFRD at 2. Like the circumstances in Singh v. Noem, the Respondents re-detention of Xing is absent any material change in circumstances that render him a danger to the community or a flight risk. See PFRD at 3. As the Court concludes that the four-month detention period in Singh v. Noem serves the purpose of facilitating deportation, so too does Xing's six-month detention period facilitate deportation. See Singh v. Noem 2026 WL 146005, at *39. See Demore v. Kim, 538 U.S. at 530 (holding that six months in INS custody does not violate the alien's due process rights). See Otis V. v. Green, No. 18-CV-742, 2018 WL 3302997, at *8 (D.N.J. July 5, 2018)(Linares, J.,)(holding that detention for over a year is insufficient to render continued detention so suspect as to require a bond hearing). The Court struggles to conclude that Xing's detention does not facilitate deportation after concluding that a similar detention period in Singh v. Noem facilitates deportation. Accordingly, the Court sustains this portion of the Respondents' Objections and concludes that Xing's detention does not violate his due process rights.

**IT IS ORDERED** that: (i) the Respondents' Objections to the Proposed Findings and Recommended Disposition, filed March 20, 2026 (Doc. 18), are sustained; (ii) the Court sustains the Respondents' Objection to the recommendation that Xing is entitled to a bond hearing based

on <u>Bautista</u>; (iii) the Court sustains the Respondents' Objection to the recommendation that Xing is not subject to 8 U.S.C. § 1225's mandatory detention; (iv) the Court sustains the Respondents' Objection to the recommendation that Xing's detention violates his due process rights; (v) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed March 6, 2026 (Doc. 17)("PFRD"), is adopted in part and not adopted in part; (vi) the Court adopts the PFRD's recommendation that the Emergency Motion for Temporary Restraining Order and Preliminary Injunction, filed February 17, 2026 (Doc.6), is denied; (vii) the Court does not adopt the PFRD's recommendation that Xing be granted a bond hearing; (viii) the Court does not adopt the PFRD's recommendation that, if the Respondents do not hold a bond hearing within seven days, Xing be must be released immediately; (ix) the Amended Verified Emergency Petition for Writ of Habeas Corpus on Behalf of Petitioner Pursuant to 28 U.S.C. § 2241, filed February 6, 2026 (Doc. 2), is denied without prejudice; (x) the Court sustains the Respondents' Objections; and (xi) a separate Final Judgment will be entered.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Guofeng Li
VIP Law Group PC
Farmingdale, New York

     *Attorneys for the Petitioner*

Todd Blanche
  Deputy Attorney General
Ryan Ellison
  First Assistant United States Attorney
Louis C. Mattei
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for Respondents Kristi Noem, Pamela Bondi, and Mary De Anda-Ybarra*

- 18 -

- 19 -

Christina Muscarella Gooch
Sutin, Thayer & Browne
Albuquerque, New Mexico

*Attorneys for Respondent Dora Castro*